Thank you. May it please the court, my name is Linda Dalton. I'm a senior assistant attorney general representing the named defendants below who I will collectively refer to as the state. With me at council table, you've met Nancy Crear, general counsel to the Public Disclosure Commission. This case is before the court on the state's appeal of a preliminary injunction issued by the district court, which the state believes was issued improperly because of the district court's faulty application of portions of the preliminary injunction criteria from the Winter case and from the Alliance for Wild Rockies v. Cottrell. And the state is requesting the court vacate, overturn the district court's preliminary injunction and the matter returned then to the district court for further proceedings on the merits of the claims brought by the recall proponents in this case. I would like to address, if the court would indulge me for a few minutes, the question of mootness that was raised by the court in its October 25th order and also the case of Inyart that we got an order about yesterday. To the extent that the court believes there was an intervening event since the filing of this appeal, since the filing of the complaint, in that the recall proponents did not qualify with a sufficient amount of signatures to have their measure presented to the voters in the November, excuse me, the November general election. To the extent that the court would believe that that would render the preliminary injunction a nullity at this point because of its limited application to these recall proponents, then we would believe that the case would be moot as long as the preliminary injunction was a nullity and would go away. To the extent that that intervening action does not do anything to the preliminary injunction and leaves it in full force and effect, we believe that the State's appeal issues are still pertinent. Breyer, is it your position in the case that the appeal is moot or is it not your position or is that not your position? Well, at this point in time, the preliminary injunction is still in full force and effect and so it would not be moot. Well, even in Enyard, it wasn't. The injunctions had gone and they still found it not moot because it was capable of repetition. Because it was capable of repetition. In that case. In that case with that particular plaintiff because she still had not passed the bar. In this particular situation, these recall proponents have registered as a single-year committee. That time has come and gone. The individual that they're seeking to recall is up for reelection next year. The actual ability of these particular proponents to have this event repeated is probably a virtual impossibility at this stage. It appears that the capable of repetition evading review exception to mootness doctrine applies, but there's another part to it. Is it reasonable to expect that this same restriction would apply to this plaintiff again in the future? And we would argue that it would not apply to these in the future. Was that your position, that just because it's a single-year PAC? Yes. And because they've declared that that's their intention, to be a single-year political committee. In Enyard, we seem to switch the focus to the defendant's side. That is, it wasn't that that particular plaintiff would be back in the same predicament. It was that the bar examiners should fairly anticipate they were going to have people presenting the same question to them in the future. How about from that perspective? I mean, are recall elections or efforts in Washington common, uncommon? Not common. They do occur. They're relatively rare. Based on the amount of time we had to put together a record for this case below, we don't have numbers that we could present you from the record to tell you exactly how many, and because of the process involved, an even smaller amount actually qualify to the signature-gathering stage. They may get to a superior court review stage, but not to the signature-gathering stage, because they're found to be deficient on their face by the superior court or the Supreme Court. So when you look at the potential for repetition with these particular applicants, we would say no, that it's probably virtually impossible, given the circumstances in this case, unlike the case in Enyart where Ms. Enyart had the ability to continue to apply to take the bar, and the bar examiner's group would continue to have to deal with her request to have the examination rendered in a certain fashion. Now, they did, in fact, say that it's reasonable to expect that she will sign up for a future administration of the bar exam, and she'll seek another preliminary injunction. Correct. Right. And we don't have the same evidence. We don't have the same indication in this case. We simply don't have the record, number one. But even with the representations made by the individual recall proponents to the court in response to this request for response about mootness, we don't have that. But the extent that the State being subjected to an injunction in the future on this $800 limit, it's just not limited to this particular unit of government. In other words, $800 per person limit is applicable to State-wide elections as well. It is. It's the candidate contribution limit as well. This particular statute that's been challenged just applies to recall campaigns, so the vote for and against. So the State has no interest in having the district court's reason for granting the injunction resolved one way or the other on the merits? We have an interest in having the district court's decision on how it rendered the preliminary injunction decided that the district court was in error about its application of the criteria. The case is moot. But the underlying. So if the case is moot, that would not be the outcome of this appeal, then, correct? That would be the outcome of this appeal, but it would not be the outcome of the  case. The case would then return to the district court for further consideration of the issues raised by the recall proponents. The underlying case would continue on, it's just that the appeal might be moot. Yes. And I don't want to mislead anyone. We would believe that there would be an argument under Article III that the case below would be dismissed also, but as to this particular injunction at this stage on this appeal. Well, when it gets back to the district court in that situation, they could develop the record a little bit better about their interest in pursuing recall activity. And we could produce our record more on the governmental interest also. So the district court could always address mootness if it got back there. Exactly. What do you want the order of this Court, if we agree with you, what do you want the order to say? That it could say that we win based on our issues and the injunction is overturned, or that you find that it's moot and that the preliminary injunction is still vacated. So either way, the result we want is the preliminary injunction vacated. Okay. And then what's at issue in the district court after that? Well, the issue would be to consideration of the remainder of the record, their claims below, whether there's an Article III motion to dismiss that the district court would entertain, and then the merits of the proceedings below. I mean, their claims. I mean, the merits, if the whole point of the case being moot is that the case is moot. I mean, I don't understand how this appeal would be treated differently from the rest of the case. Why would this appeal be moot and the rest of the case not? We'd actually agree that the case, the entire case should be moot based on this intervening event. But what this case court has before it is this appeal. Well, you have to have standing at every stage of the proceeding.  And you can look at a preliminary injunction discreetly. And we do believe that this Court has the authority to look at the whole case on the record you have. Oh, I mean, that's not clear yet, but, you know. Well, but it is probably within your authority to do that. Whether that's the appropriate thing to do at this stage is another question. Okay. Well, why don't you, assuming we're going to go farther with the case. Okay. We would put it to the Court that the basis upon which the district court rendered its decision to issue the preliminary injunction was flawed. And it was flawed for very specific reasons applicable to how the Court took the standard under Winter and this Court's decision on the Wild Rockies case and mushed them sort of together and then reached a decision. And specifically, without looking at the whole issue of the merits of the claims, the district court made a decision that the merits that the recall proponents had reached had raised some serious questions. And so when you apply the serious questions analysis that comes from Cattrall, what the Court then should have done is said when balancing the hardships, those hardships tip sharply in favor of the recall proponents, thus moving to the irreparable harm and the public's interest, and then made a conclusion about the case and whether a preliminary injunction should be issued. What this Court did is find the serious questions, which we believe it was within its authority to do at that point, didn't really address the hardships at all. And to the extent that it did, it did it in terms of balancing equities and then said they tipped in favor of the recall proponents and called the matter a close call. So to the extent that it took pieces of different cases and cobbled together this theory of how an injunction should be applied, it did so in error. And based on that decision alone, it's enough for this Court to determine that the district court abused its discretion and then to vacate the preliminary injunction. So at this stage we were to conclude that the plaintiff's showing was showing that they're substantially likely to prevail on the merits under Winter. I still think the matter would need to be remanded back to the district court because the rest of the criteria that were applied in the method in which they were applied doesn't follow Winter either. There was sufficient information for the district court to find that, and it did find this sort of balancing of that the public's interest was just as important as their interest, the public's interest in integrity of elections, that the court still rendered the wrong decision in issuing the injunction. I have less than four minutes, and given the representations that may be made by the district court, I would like to turn it over to Mr. Taki Flavaris. Thank you. I'm sorry.  Thank you, Your Honors. And may it please the Court, Taki Flavaris on behalf of Washington Public Campaigns and Wisconsin Democracy Campaign. The record in this case is replete with evidence that large-scale financial contributions to recall campaigns create the appearance of corruption and increase the risk of corruption in this context. And essentially the district court found that to be the case. But the district court erred by requiring evidence of corruption within plaintiff's particular campaign in order to maintain Washington's contribution limits. The district court ignored that contribution limits are preventive, that the limits had been applied to this campaign, essentially making evidence of corruption within the campaign impossible, and also that such a not-me defense is essentially     and essentially making evidence of corruption within the campaign impossible. This is a two-step process here, isn't it? Isn't the question, should they be recalled? What process? I'm not sure what process you're referring to. The ballot question is recall. It's not recall and then somebody else. Oh, I see. I see. Yes. The campaign in question attempts to galvanize support to recall an individual. If they get sufficient signatures, then they campaign to the public. And it essentially turns out to be one big negative advertisement against. But the question that the voters are asked to decide is should this person be recalled, correct? True. And they are. If the majority of the people vote yes, the voters vote yes, then I guess the local authority, whoever it might be, then appoints a replacement. Is that correct? That's correct. So where's the possibility for corruption? The possibility for corruption is when large-scale contributions come to a recall campaign and then individuals involved in that campaign benefit greatly from that in terms of gaining political capital and momentum with the voters, and subsequently reach that office and use their powers to give preferential treatment to those individuals. And this scenario – I don't know what you just said. Let me go to an example in the record. I'll go to the best example in the record that actually shows the appearance of corruption specifically because of large-scale contributions to a recall campaign. And that's the example of David Nabity, who brought large-scale donors to a recall campaign in Omaha to recall the mayor. He sought to take control of that campaign in order to further his own interests in becoming mayor. He was refused and decided to create his own recall campaign, and his donors followed him. And the appearance there was that the donors were more interested in Nabity's particular aspirations than in the substance of the campaign and the public notice. And in the record, there's – How does that apply here where you don't have – I mean, Gray Davis gets recalled in California the same day that Arnold Schwarzenegger gets elected. But you don't have that here. In fact, you don't have a new election that follows. You have an appointment. Right. And the issue of appointment is – does not preclude the corruption. First, there's evidence in the record showing a link between recall campaigns and replacement candidates within systems where appointment is involved. One example is Trevor Higbee in Lafayette, Oregon. He led a recall campaign against two counselors. He denied – he was accused of only seeking to be appointed, to be the replacement. He denied those accusations. But after a successful recall campaign, he did end up on that counsel. And the key of this case, it involved also allegations of malfeasance. And I think the keys are, first, it was a system that involved appointment. Second, it involved allegations of malfeasance. And third, there was a public perception of opportunism. And had large-scale financial contributions entered the picture, that perception certainly would have turned to a perception of corruption. You know, Counsel, I hear what you're saying. But, you know, in light of the Supreme Court's pretty clear statements about putting limits on contributions and now pushing almost, well, wherever they are on the quid pro quo, you know, these examples are a little – they're out of – they're in other jurisdictions. $800 limitation, it's a little questionable. Well, you raise a number of good points. And I think the key to analyzing this case is starting with the fact that the scrutiny applied is much lower than with expenditures. Lower than strict scrutiny, maybe. What's that? Lower than strict scrutiny, maybe. Yes. Yes. Well, I think this Court, since Citizens United has clarified that it is, as well as – Well, has clarified with caveats about, you know, we're not sure, but in any event. True. And the Supreme Court in Arizona Free Enterprise still explained that dichotomy and that it still does exist. Right. And I think that – so the key is starting with that. And in terms of the amount of the limit, there's no evidence that it doesn't allow for the effective campaigning by recall campaigns. And at the end of the day, the Supreme Court has never been faced with the type of evidence that is in this case, except for in situations when it upheld limits. When there's evidence not only of situations that create – directly create the appearance of corruption, but we also have evidence in the record of public reaction to those scenarios. And those are the cases that – examples would be the last question. But the examples you gave, those are cases involving the same kind of setup we have here, which is strictly a recall question. And then if the recall succeeds, the – whoever is appointed is at the judgment of the legislative body. No, those cases involve candidates. And this case involves recall campaigns where, in addition to evidence showing, those campaigns tend to serve as platforms for replacement candidates. There's evidence in this case about that in Washington. There's no – You gave us two examples, one from Omaha and the other, I forget where. Those – In Oregon. And those were cases where there were other candidates. There was an identified replacement candidate in the – No, no. Those are – no, no. In neither of those cases was there any declaration by those individuals that they were – Okay. So that was – let's go back to clarify. The two cases, Oregon and Omaha, which is not a state, I know, those involve the comparable process that exists here, which is a recall. Yes. And if the recall succeeds, then whoever replaces the recalled person will then be known by – at the discretion or the judgment of the legislative body. In other words, they will pick the successor. They will. Your argument is that there's a linkage there in practice or appearance, because the person who wants to get on – get to be the replacement for the recalled has all these shenanigan ways to find ways to use this recall process to advance his interest, and the person who or the committee that's sponsoring the recall will have influence over that person because they will have made it possible for that person to become the new legislator. It tends to be that that person is leading the recall campaign. Okay. And there's a link not only to being appointed but also to the subsequent regular election. And that's – you say there's that evidence in this case? When you say in this case – In this case that the person leading this recall that's before us in this case was in fact the person who is going to be or wants to be the replacement? There's evidence hinting at that, but there's no large-scale financial contributions to sort of create that salient opportunity for corruption. Okay. All right. Thank you. Thank you very much. Thank you, Your Honor. My name is Bill Maurer. I represent the recall, Dale Washam Committee of the Oldfield and Helsden Law Firm and Robin Ferris, the proponent of the recall. I'd like to specifically address the Court's concerns about mootness to begin with. This case is simply not moot, even after the recall campaign was unable to collect enough signatures for three reasons. First, the State has represented that the recall campaign will have to pay back any funds collected above $800. Where's that in the record? That is at ER-124, which is the Defendant's Motion for Stay of Proceedings, page 2, where Ms. Dalton says, Finally, a stay will prevent recall Dale Washam from having to return over-limit contributions should the preliminary injunction be overturned or should the plaintiff not otherwise prevail on the merits. So the State's position is they're going to have to pay this back, regardless of whether they ended up on the ballot or not. I would also like to point out that they would have to pay back any contributions above $800 received. And there's evidence that they actually got contributions in excess of $800? Yes, they have a number of contributions in excess of $800. In addition, Ms. Ferris testified that I anticipate participating in future campaigns to recall elected officials in Washington should an official engage in malfeasance or misfeasance while in office. That is at the excerpt record, page 183. In addition, there are two other In addition? I mean, is it such a certainty that we're going to have public officials that fall into that category? I think if Mr. Washam is reelected, there is a very good likelihood that Ms. Ferris will be involved in another recall campaign. And I would note for the record as well that Mr. Washam is a perennial candidate. He runs for pretty much every office that's available. I would also note that this particular appeal is not moot right now because the contribution limits do not stop with an election or with the failure of a campaign to get on the ballot under Washington law. The $800 limitation under Washington law still affects the recall Dale Washam campaign. In addition, that $800 limitation creates a severe restriction. But the $800 limitation only applied during the course of the campaign. The campaign's over. Well, our reading of Washington law, and perhaps Ms. Dalton would be better suited to clarify this, is that those limitations continue after an election, that they remain in place. And that would make sense because if the purpose of this is ostensibly to fight corruption or the appearance of corruption, a campaign could put the entire campaign on its credit card and then go to one large donor after the campaign is complete and say, here, pay my $20,000 credit card. In addition, there is a severe limitation on the right of association of the Oldfield and Helsden law firm with Ms. Ferris and with the recall Dale Washam campaign. As the record indicates, the Oldfield and Helsden law firm has maxed out on its $800 contributions. If they provide a single second, if Mr. Helsden leans over to Ms. Ferris at any point today and says, hey, you've got to do such and such about your requirements under Washington law, without an injunction, he will be breaking the law. And I would also note that with regard to Ms. Dalton's representation that this is a single-year committee, there is nothing that prevents a committee from re-upping that. And I would also point out that under Washington's newly codified campaign disclosure laws, recall committees and, indeed, all committees in the State of Washington have to refile on January 1, 2012. So, in other words, the State has not met its heavy and stringent burden of demonstrating that this case is moot, and it certainly has not demonstrated that even this appeal is moot. And even if when this appeal does become moot, the in your case instructs us that the preliminary injunction will be capable of repetition, yet evading review. Well, but as I pointed out, although they did focus on the impact on the bar examiner group, they did make a point that it was that plaintiff, that complaining party, who was going to be bringing that claim. So it isn't yes, the preliminary injunctions had been exhausted, two of them, but the court found that in that case it was going to be that blind person who was the bar examinee who would be asking for that accommodation. Well, as this Court recognized in Citizens for Clean Government, if the recall proponents here stage another recall campaign, should they do that, they will be subject to this law once again. They will need another preliminary injunction to ensure that their rights during the recall are protected. But, you know, the problem with her affidavit, as Judge Clifton pointed out, is that if in the future there's any corruption, might be involved in another recall campaign. It's pretty remote. The standard, Your Honor, is reasonable expectation. It is exactly the standard that was applied. Well, you're asking us to, you know, what you're saying is that we're reasonably certain there's going to be corruption. We're reasonably certain that she's going to be involved in a recall campaign. Well, Your Honor, Washington State has had recall campaigns for 100 years. And we – there is a recall standard, and there are officials in Washington that engage in malfeasance or misfeasance. In fact, just last week, two city council members in a city on the peninsula were determined to be subject to recall. So recall campaigns do occur in Washington State. And Ms. Ferris, much to her probable regret, has been bitten by the activism bug. And she believes that this is a – this is something that is – she anticipates participating in in the future. Under Wisconsin Right to Life, under Citizens for Clean Government, under Bilotti, all that points to a situation that's capable of repetition, yet evading review. All right. Why don't you turn to the merits? Okay. Let's assume that you've got standing. Okay. Why should we affirm what the district court did? And it looks like the counsel said he mushed together standards for granting preliminary injunctive relief. Well, I'd like to remind Your Honor of the deferential standard for appellate review for preliminary injunctions. And under that standard, there's three questions that are basically asked. First, did the district court make a clearly erroneous finding of fact when it found that the recall proponents have acted independently from and did not coordinate with candidates or potential candidates? Two, the second question is, did the district court apply the correct legal standard when it applied the Supreme Court's decisions in Arizona Free Enterprise Club and Citizens United? And this Court's decisions, recent decisions in Fallheimer, Long Beach, and Citizens for Clean Government? That is, did it make an error, a legal error, when it correctly concluded that the State cannot constitutionally limit contributions to recall proponents' campaigns? And three, did the Court err when it decided that the application of 4217-640-3 caused and continues to cause irreparable harm to the First Amendment rights of the applicants and their ability to receive pro bono legal assistance in financial contributions above $800? Under this Court's and under the Supreme Court's deferential standard of review, the answer to all those questions is the district court did not abuse its discretion. Therefore, this Court should affirm that. Turning to Mr. Fulvariz's and Ms. Dalton's arguments that there is sufficient concern about corruption or the appearance of corruption in a recall campaign, I would note that in the – I would note in the Citizens for Clean Government case and in the Randall and Nixon cases, the Court's made clear that hypotheticals along with vague allusions to practical experience cannot satisfy the government's First Amendment burden. And that is exactly all they have provided here. They have not demonstrated a single instance of quid pro quo corruption in the State of Washington in the 100 years that this State has had recall campaigns. And, in fact, they have been unable to demonstrate it. How long has the limitation been in effect? 2006, Your Honor. They have not been – also have not been able to demonstrate a single instance of quid pro quo corruption in other states where they have a very different standard or different method for recalling public officials than Washington State does. What about the two that Amica's counsel suggested, Omaha and Oregon? Your Honor, the standard is quid pro quo corruption. What Mr. Fulvariz was describing was not quid pro quo corruption. There is simply no candidate in which to engage in quid pro quo corruption in a recall campaign in Washington State. There is an attenuated, very attenuated linkage between recall proponents and somebody at some point who may run for office if there's a recall, if they get sufficient enough signatures to be able to get onto the ballot and recall the elected official. And that person then decides to run for office in the next regularly scheduled general election. I – if someone was attempting to influence that in a dollars-for-favors method, that is a particularly stupid way to go about doing it in contributing to a recall campaign in the State of Washington. Well, why is that? If the council member gets reelected and somebody says, look, the quality of the campaign wasn't up to snuff, but I have decided I'm fed up and I want to – some wealthy businessman decides he wants to be on the council now. And so he fronts a – uses a recall committee to go after the incumbent. And it's his money that's funding the whole effort, and then he – so the recall campaign succeeds because now in a small unit of government, big dollars has a big impact. And so he now has gotten rid of the incumbent. What's the mechanism here for the state to prevent him then capitalizing on that recall effort and getting himself onto the council? With all due respect, Your Honor, that is not quid pro quo corruption. And the United States Supreme Court in the Citizens United case made clear that quid pro quo corruption is the only justification that the government can use to restrict campaign and political activity and political speech. Okay, so let's suppose I throw into the hypothetical that he is good friends with the council president or a majority of the council. Maybe he's trying – they're trying to get rid of a, you know, a dissident or whatever. And so there is an understanding between the council and this donor that he will be the one that they're going to pick. And this is all part of an overall strategy. Is that quid pro quo? Actually, that would be self-dealing, Your Honor, and that is specifically prevented by a Washington State Attorney General appeal decision that's referenced actually in Ms. Dalton's materials. And we also need to be cognizant of the fact that what we're dealing with here is essentially a ballot proposition. But the idea that a public official may at some point have ingratiation or access to a large donor to a separate campaign does not constitute corruption or even the appearance of corruption under Citizens United. Well, I'd like to explore that, because the specter that the state raises is the notion of basically extortion or undue influence or a threat of recall using it as a weapon. So if you don't go along with my political demands, I can go out and finance an expensive recall campaign against you, and I'll destroy you, and you'll lose your job. Your Honor, that scenario is almost impossible in the State of Washington because of the gatekeeper role played by the Washington Superior Court and the Washington Supreme Court, as well as the standards set out in the Washington Constitution that recalls can only come about if there is a demonstration that the allegations consist of misfeasance, malfeasance, or violation of the oath of office. But do they have to be probable cause, or is it just that they have to fit within those frameworks? Those charges need to constitute malfeasance, misfeasance, or violation of the oath of office. So he makes up a malfeasance claim. Your Honor, the ---- Can that be screened out if it's a bogus claim? Absolutely. In fact, one of the charges here against Mr. Washam, who is, many would aver, is more than deserving of charges of malfeasance and misfeasance, one of the charges was thrown out against him because the Superior Court found that it did not constitute malfeasance. Like a mini-special proceeding where they can contest these issues, correct? That's precisely right. Washington has a very carefully calibrated and thoughtful process for recalls. It does not have the I don't like this guy, so I'm going to get rid of him standard. It has a very, very well-thought-out standard. And I would submit that the people who designed the Washington State Constitution address the issue of someone wanting to recall someone and take the ---- take their place by creating this standard and by mandating that the replacement person, the replacement elected official, be appointed, not elected. And in fact, the careful calibration of Washington's recall campaign standard is reflects exactly how poorly tailored this particular law is, because it takes away from the people of the State of Washington their most powerful tool to fight a corrupt or incompetent elected official, the recall, and creates an artificial limitation on the ability of the people to collect enough resources to be able to mount an effective recall. It is the ultimate incumbent protection system. And in fact, that is reflective of the legislative history in this case as well, which does not discuss, A, recalls at all. And to the extent that it discusses the need to restrict contributions, the need is expressed as we have to get rid of money in campaigns and we have to level the playing field. Those are two ---- those are not only not significant governmental interests, they're not even legitimate governmental interests. And so there is no justification in the record or in the legislative history for the existence of this particular law. With regard to the district court's conclusion that the recall proponents did not coordinate or prearrange their activity with a candidate, a candidate or a political party, remember, we are at a preliminary injunction standard stage right now. This is as applied to the recall proponents. And this finding was clearly not erroneous. In fact, it was absolutely correct, both with regard to the facts put forward by the recall proponents and with common sense. Washington, as I mentioned before, is one of four states in the nation when the person who will place the recall official is appointed and not elected. Finally, turning to Mr. Flavaris' anecdotes and hypotheticals from other states, again, these do not describe quid pro quo corruption. When they say that the Washington recall campaign system can produce corruption, what they are talking about at best is ingratiation and access to things that the United States Supreme Court said do not constitute quid pro quo corruption. And I think it's important that this Court recognize that because one of the reasons why the U.S. Supreme Court in the Citizens United case said that you have to draw a strict line on quid pro quo corruption is the idea that ingratiation and access are simply unlimited principles. They can be used, if that's the standard, it can be used to justify a whole range of political and nonpolitical activities, such as I may give to a nonprofit that is run by an elected official. Does that mean that the government can restrict my ability to donate to a nonprofit because there is an association with an elected official? At that point, the right of association has become a nullity. So that has no binding principle. In conclusion, I would note that at least five U.S. Supreme Court cases and at least four or five court of appeals cases, including two from this Court, all point to a very strong showing of likelihood of success on the merits, and the district court did not abuse its discretion when it granted the preliminary injunction, and we respectfully request that the Court affirm the injunction and keep it in place until a trial can be held on the merits. Thank you. Is it correct? May I just ask one question? Please. I just want to ask one question. I want to clarify one thing the counsel just represented. Is it correct that the preliminary injunction is vacated, that the committee may be responsible for returning excess contributions? I don't believe that if a preliminary injunction is vacated, like the district court could vacate it, that the effectiveness while it was in place would be somehow overturned. I didn't hear any sort of representation. Well, my question is, is the campaign committee, is there a reasonable possibility that the committee would be required to return excess contributions? No. That would be my first point back to the Court. To the extent that the committee has debt, would it be the State's position that the limit, if the injunction were vacated, that the limits would be applied? And so retirement of that debt would be subject to obtaining contributions under this limit. That's a closer call. The question would be, potentially is yes. The question is, is there debt? You don't have a record that shows there debt other than briefing representations. The committee has a final report due in December. They filed a report in or were supposed to file a report on November 10th. I haven't looked at that. I didn't, you know, I didn't think it was appropriate to bring extraneous, you know, factual issues to you at this point that couldn't be tested. And I want to go, because I want to address the four provisions that Mr. Maurer discussed with regards to mootness. One of them was this issue of having to pay it back. There's no law under the PDC disclosure law that says they have to pay their debts off. That would be between them and whoever they incurred the debt to. Well, would that make the – I've worked with candidates years ago in that position. If the creditor is owed more than $800, it's fair to collect the debt. Would itself make it a donor of more than $800? I don't believe under Washington law that would be the case, that you would treat a vendor's obligation as a contribution somehow or an in-kind contribution. If they forgive it? It's a contribution in kind. I see a lot of, you know, post-campaign filings that have a lot of obligations that could probably go back in time and not find any of them actually paid. Well, that may be, but that doesn't mean it's lawful. It doesn't mean what? It's lawful. It just may mean that you didn't elect, that the State didn't elect to go enforce the $800 limit. Right. The State doesn't have any law that would be enforceable against them for failing to pay their obligations. Well, wait a minute. If I am a creditor for $5,000 and I forgive the debt after the election, you know, you don't think that's a constructive violation of the $800 limit? That could be. Yeah. Depending on how, yeah. Right. Depending on who the debt is to and how it was fashioned. It's to the election. You know, they used their $800 that they, that is the campaign committee, recall committee, used their money, incurred an obligation from there. Right. And now that person says, hey, don't worry about it. Yeah. You know, it would be my contribution to your unsuccessful. Yeah. We just don't know if that's the case, if they actually have obligations. And I have very little time, but the few points with regards to mootness, I think it's highly speculative that Ms. Farris has a reasonable expectation of engaging in recall matters in the future. What about the law firm? Again, recall, I mean, the same would apply to them. They said we may get their testimony. But they've maxed out so that if they give any post-campaign legal advice, they're exceeding the $800 limit? There's no evidence before you that suggests that those are required, that there's legal advice that would be necessary. Their campaign has a campaign filer specialist that they've been using. There's no representation to you that there's a specific legal question that actually exists. So, again, that would be speculative at best about how that would come up in context of this committee. I thought they were retained as counsel. They just couldn't do anything more. I'm sorry? I thought they were retained counsel. Well, again, you still have to have the activity that would be involved. And what activity would that be at this point with this committee? It's a fairly reasonable inference that they might likely call their lawyers. But then they, the committee, could pay for that as a vendor. Just, if I may briefly, I want to correct the standard that this Court has applied in looking at preliminary injunctions. We listened to a lot of information from the recall proponents. None of it dealt with the issue the State has raised about the proper application of winter and control in this instance. There's a lot of discussion about the merits of the case, but that's only one piece of the Court's review of a preliminary injunction. You look at clearly erroneous on the findings of fact, and you put yourself in a de novo review position to see if the Court properly applied the law. In this case, the State is telling you that in applying the preliminary injunction standard, the district court erred. And materially, how did it err if there was a, if the equities tipped decidedly in the plaintiff's favor? Because it did not say that. It said it was a close call. But we're on de novo review. So can we look at the record and look at the law and decide that even if the district court had applied the proper standard, either under winter or under the serious question approach, that no matter what standard applied, a preliminary injunction was justified? You have the, I believe you, yes. In this circumstance, we would still say that you shouldn't in how it dealt with the irreparable harm, the balancing of the public's interest. But, yes, I do believe you could. And I'm probably out of time. I have a few more points, but I'll let you go with that. Thank you. Now you can, I'll give you another two points. Oh, great. I wanted to correct the impression that, I talked about the standard, but correct the impression that the examples that were provided to you when you are looking at the merits are hypotheticals. I don't think any of those situations were hypotheticals. They were actually real situations. Additionally, the courts, when they look at the merits and the issue of corruption, it's not just we have to prove corruption. This case is, as Mr. Maurer said, a very preliminary stage. It's also the parents of corruption. And Washington citizens have the right to sort of, you know, look at those issues and try to prevent. And this is not a ballot measure situation. These are real people who are susceptible to being influenced by money. Okay. Thank you. All right. Counsel, thank you for the arguments. We very much appreciate them. And Farrah's case is submitted.
judges: Fisher, Paez, Clifton